# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Ryan W. Alvar, | No. 25-cv-2792 (KMM/LIB) |
| Plaintiff, | |
| v. | |
| State of Minnesota; St. Louis County; City of Duluth; Douglas County; City of Superior; Judge Shawn Pearson; Referee Kathryn Bergstrom; Child Support Magistrate Clarissa Ek; Judge Nicole Hopps; Judge Theresa Neo; Guardian ad Litem Jordan Mae Dokken; Landreville & Schwandt, P.A.; Alexander M. Landreville, Attorney; Katelynn Schwandt, Attorney; Reinke, Taylor, PLLC; Shawn C. Reinke, Attorney; Victoria M.B. Taylor, Attorney; Johnson Turner PLLC; Katie M. Jarvi, Attorney; Safe Haven Shelter and Resource Center; Justice North Civil Legal Aid; Amy Jo Schmidt; Domestic Abuse Intervention Program; Kartta Group; Sara Bovee; Ashlan Mahan; Chief Judge Leslie Beiers; | **ORDER** |
| Defendants. | |

Plaintiff Ryan W. Alvar brings this case pursuant to 42 U.S.C. § 1983, claiming that Defendants violated his federal constitutional rights during ongoing order-for-protection and child-custody proceedings in state court. (*See generally* Dkt. No. 1.) Mr. Alvar recently filed an amended complaint, which is now the operative pleading.[1] (Dkt. No. 26.) For the reasons stated

---

[1] "A party may amend its pleading once as a matter of course no later than . . . 21 days after serving it . . . ." Fed. R. Civ. P. 15(a)(1)(A). There is no indication that Mr. Alvar ever served his original complaint, so he was allowed to file the amended complaint as a matter of course. Any future amendment will require leave of court or the consent of the opposing parties. Fed. R. Civ. P. 15(a)(2). For the sake of simplicity, the Court refers to the amended complaint as "the complaint" in this Order.

1

below, Mr. Alvar's motion for emergency injunctive relief is denied and the Amended Complaint is dismissed in part without prejudice and stayed in part.

## BACKGROUND

### *Factual Background and Mr. Alvar's Claims*

Mr. Alvar's complaint is extraordinarily long,[2] so the Court will summarize his allegations and claims. In short, Mr. Alvar alleges that the Defendants violated his federal constitutional rights to due process under the Fourteenth Amendment, freedom of speech and to petition the government under the First Amendment, and to be free from unreasonable seizures under the Fourth Amendment. Since July 2024, Mr. Alvar has been involved in an order-for-protection (OFP) case in state court involving the mother of his children, Amy Jo Schmidt, who is a named defendant in this case.[3] On August 16, 2024, Mr. Alvar filed a petition for custody of the couple's children. *In re The Custody of the Children of Ryan William Alvar and Amy Jo Schmidt*, No. 69DU-FA-24-551 (St. Louis Cnty. Dist. Ct. Aug. 16, 2024) ("*Custody Case*") (Index 3), https://publicaccess.courts.state.mn.us/CaseSearch. His claims in this case concern that ongoing state-court proceeding. (Dkt. No. 26 ¶ 46.)

The Defendants are all involved in the underlying state-court proceedings. They are:

- the State of Minnesota;
- St. Louis County;
- the City of Duluth;
- the City of Superior, Wisconsin;

---

[2] The amended complaint is 276 pages long, with the "factual allegations" beginning on page 96. (Dkt. No. 26 ¶¶ 67–96.) Much of this is due to a lengthy introduction and identification of each of the parties with narrative summaries of the relevant actions taken by each defendant.

[3] Mr. Alvar's state court case regarding an order for protection is Case Number 69DU-FA-24-464. Records of this proceeding are not publicly available in the Minnesota Court Records Online system.

- Douglas County, Wisconsin;
- several state court judges (Judge Shawn Pearson, Referee Kathryn Bergstrom, Child Support Magistrate Clarissa Ek, Judge Nicole Hopps, Judge Theresa Ngo, and Chief Judge Leslie Beiers);
- the court-appointed Guardian ad Litem ("GAL") in the custody case (Jordan Mae Dokken);
- Ms. Schmidt;
- Ms. Schmidt's counsel (attorneys Alexander Landreville, Katelynn Schwandt, and the firm Landreville & Schwandt, P.A, as well as attorneys Shawn Craig Reinke and Victoria Taylor);
- Justice North Civil Legal Aid, which helped connect Ms. Schmidt to the Landreville & Schwandt, P.A., law firm;
- Mr. Alvar's own counsel (Katie Marie Jarvi and the Johnson Turner PLLC law firm);
- mental health professionals who evaluated Mr. Alvar and Ms. Schmidt in connection with the child-custody case (Dr. Ashlan Mahan and Dr. Sara Bovee of Kartta Group);
- Domestic Abuse Intervention Program, an organization that operates a facility where Mr. Alvar had supervised parenting time with his children; and
- Safe Haven Shelter and Resource Center, a domestic violence advocacy group that provided support for and advice to Ms. Schmidt during court proceedings.

Mr. Alvar brought the underlying state-court litigation alleging that Ms. Schmidt assaulted him in July 2024. But she claimed to have been a victim of abuse by Mr. Alvar. Ms. Schmidt applied for and obtained an emergency OFP from Defendant Judge Shawn Pearson. Mr. Alvar claims that Judge Pearson issued the emergency OFP based on "false allegations" and "without evidentiary review" and violated his due-process rights. (*Id.* ¶¶52, 68–69.)

Mr. Alvar claims that during the ongoing child-custody dispute, Ms. Schmidt surreptitiously accessed his computer files, which were stored in a Dropbox account. He reported these actions to the City of Duluth's Police Department, but, according to Mr. Alvar, the police failed to respond properly. (*Id.* ¶¶ 70–71, 73, 75.) He alleges that Ms. Schmidt and her attorney, Alexander Landreville, used the information they obtained about Mr. Alvar's finances from those

files to convince Child Support Magistrate Clarissa Ek to issue financial support orders unfavorable to him. (*Id.* ¶¶ 73–74); *Custody Case* (Index 57). Mr. Alvar also alleges that Magistrate Ek violated his constitutional rights by issuing her order before ruling on his own motion to supplement the record. On April 25, 2025, Child Support Magistrate Catherine Baker ordered Mr. Alvar to pay $1,298 monthly to Ms. Schmidt in child support. *Custody Case* (Index 108).

Defendant Referee Kathryn Bergstrom presided over several OFP-related hearings. Although she found claims that Mr. Alvar abused the couple's children to be unsubstantiated, "she still found [Mr. Alvar] to be abusive based solely on the testimony of Amy and her family and friends." (Dkt. No. 26 ¶ 76.) Mr. Alvar claims that Referee Bergstrom should have allowed shared custody and parenting time and otherwise mishandled the case in violation of his due-process rights. (*Id.* ¶ 53.) Mr. Alvar indicates that he intends to appeal Referee Bergstrom's decisions to the Minnesota Court of Appeals. (*Id.*)

A significant portion of the case before this Court concerns GAL Dokken's preparation of a report in early 2025 concerning the best interests of the children, the confidentiality of that report, Mr. Alvar's publication of the report on his own website and social media accounts, and subsequent contempt proceedings for violating the state court's prohibition on sharing the report publicly. According to the complaint, GAL Dokken violated her responsibility to act in the children's best interests by supporting Ms. Schmidt's position that she should retain sole custody of the children. (*Id.* ¶ 79.) GAL Dokken also allegedly acted improperly by requesting that her January 2025 report be treated as confidential. (*See id.* ¶¶ 58, 82.) And Defendant Katie Jarvie from the law firm of Johnson Turner PLLC, who represented Mr. Alvar in the custody case in 2025, allegedly failed to follow Mr. Alvar's instruction to request temporary custody during a

4

review hearing. Ms. Jarvi also allegedly failed to object to GAL Dokken's request that her January 2, 2025 report be deemed confidential. (*Id.* ¶ 77); *Custody Case* (Index 56).

On March 6, 2025, Defendant Judge Theresa Neo issued a ruling declaring the GAL report confidential despite an alleged lack of support for any confidentiality protections. *Custody Case* (Index 90 ¶ 6). Judge Neo's order indicated that Mr. Alvar had published the report on his website and social media accounts and that the previous report and future reports must not be shared. *Custody Case* (Index 90, Order ¶ 5). Mr. Alvar claims that the order violated his First Amendment rights. (Dkt. No. 26 ¶ 56). After that ruling, Mr. Alvar published the GAL report on his website and on social media to criticize the report and the family-court system. (*See* Dkt. No. 26 ¶¶ 57, 82); *Custody Case* (Index 141).

Defendants Ms. Schmidt and her attorneys then sought contempt sanctions for Mr. Alvar's sharing of the confidential report. (Dkt. No. 26 ¶¶ 60, 85.) Defendant Judge Nicole Hopps presided over the contempt proceedings and told Mr. Alvar that he would be found in contempt unless he removed the report from publication; otherwise, he would be fined and potentially serve time. (*Id.* ¶¶ 55, 82; *Custody Case* (Index 115).) In July 2025, Chief Judge Leslie Beiers presided over a contempt hearing regarding Mr. Alvar's ongoing publication of the GAL report. Judge Beiers found Mr. Alvar in contempt, which Mr. Alvar claims violated his First Amendment rights. (Dkt. No. 26 ¶¶ 57, 86); *Custody Case* (Index 141).) Later that month, Mr. Alvar was placed in custody for contempt and required to pay Ms. Schmidt $3,240 to compensate for attorney fees she incurred in bringing the motion for contempt. (Dkt. No. 26 ¶ 86.) However, Mr. Alvar has since been released after removing the report from his website. *Custody Case* (Index 152).

Mr. Alvar claims that his rights were also violated by the Domestic Abuse Intervention Program, which operates a visitation center where he initially visited his children. (Dkt. No. 26

¶ 80.) After he began visiting his children there, the Program eventually prohibited Mr. Alvar from making recordings of the visits unless allowed by court order, which he claims violates his constitutional rights. (*Id.*) Plaintiff also claims that his rights were violated by Defendant Safe Haven Shelter and Resource Center, a domestic-violence advocacy group, because it supported and advised Ms. Schmidt during their child-custody proceedings. (*Id.* ¶ 83.) And, Mr. Alvar asserts that Dr. Ashlan Mahan and Dr. Sara Bovee of Kartta Group (both named defendants) submitted damaging and inaccurate psychological-evaluation evidence to the court. (*Id.* ¶ 91.)

In his complaint, Mr. Alvar seeks compensatory and punitive damages. (*Id.* ¶ 272.) He also seeks a declaratory judgment stating that (1) the use of the information Ms. Schmidt obtained by accessing his Dropbox files violated his due-process rights; (2) the judicial orders enforcing the confidentiality of the GAL report and the contempt sanctions regarding his publication of that report violated his First Amendment free-speech rights; (3) due process requires the state-funded and court-appointed actors involved in his case to act fairly and neutrally; (4) that parenting time, custody decisions, and child-welfare assessments cannot be based on unlawfully obtained evidence or unverified allegations; and (5) that "Minnesota's judicial actors enforcement agencies, and publicly funded partners named in this suit operated under color of law and are accountable for the deprivation of [Mr. Alvar's] liberty, property, and parental rights." (*Id.* at ¶¶ 258–59; *see also id.* at ¶¶ 260–61 (seeking additional declarations from the Court).)

Mr. Alvar seeks a variety of injunctive relief as well, including: (1) immediate legal and physical custody of his minor children; (2) prohibiting enforcement of the current OFP and any future OFPs; (3) prohibiting any arrests or criminal charges based on retaliatory OFP-violation claims; (4) suspension of the child-support order; (5) prohibiting further contempt proceedings regarding his public posting of the GAL report; (6) orders requiring the return of his personal

property and any other items of his still in Ms. Schmidt's possession; (7) an order compelling return of the children's comfort items along with the children; (8) any other injunctive relief deemed proper by the Court to ensure Mr. Alvar's parental rights are protected during the pendency of this matter; (9) a prohibition on  visitation center involved in court-ordered parenting time from interfering with a parent's ability to document interactions with their children; and (10) an order prohibiting reliance on biased psychological evaluations. (*Id.* at ¶¶ 264–65.) Mr. Alvar also requests a long list of "systemic injunctive relief" concerning the operation of state family court, including child-custody and support proceedings. (*Id.* at ¶¶ 265–70.)

Publicly available records in the child-custody dispute between Mr. Alvar and Ms. Schmidt show that Judge Nicole Hopps held a hearing on September 4, 2025, and additional hearings are scheduled to occur before her on October 27, 2025 and November 10, 2025. *Custody Case*, Hearings.

## DISCUSSION

### I.     Dismissal

In light of the nature of the relief sought in the complaint, which includes this Court's interference with state-court proceedings, this case implicates *Younger* abstention. *See Younger v. Harris*, 401 U.S. 37 (1971). Under that doctrine, federal courts generally abstain from interfering with certain "pending state proceedings." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10–11 (1987); *Wassef v. Tibben*, 68 F.4th 1083, 1086-87 (8th Cir. 2023). Although *Younger* abstention arose in the context of state-court criminal proceedings, it can be applied to certain civil cases as well. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–05 (1975). Courts can consider issues of *Younger* abstention sua sponte. *See Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 676 (8th Cir. 2013) (affirming the district court's determination that *Younger* abstention, which the district court raised

sua sponte, was warranted); *see also Rubbelke v. Zarembinski*, No. 23-cv-707 (PJS/ECW), 2023 WL 3094371, at *2 & n.2 (D. Minn. Apr. 26, 2023) (considering whether the court's jurisdiction is affected by the *Younger* doctrine).[4]

> Courts considering whether to abstain under *Younger* consider a three-part test:

>> First, does the underlying state proceeding fall within one of the three "exceptional circumstances" where *Younger* abstention is appropriate? Second, if the underlying proceeding fits within a *Younger* category, does the state proceeding satisfy what are known as the "*Middlesex*"[5] factors? And third, even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies?

*Wassef*, 68 F.4th at 1087 (quoting *375 Slane Chapel Rd., LLC v. Stone Cnty.*, 53 F.4th 1122, 1127 (8th Cir. 2022)).

Under the first prong, the three "exceptional circumstances" where *Younger* abstention applies include: "(1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (quoting *Sprint Commc'n's, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)) (cleaned up). Child-custody proceedings constitute such exceptional circumstances. *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2018) (applying *Younger* to temporary custody proceedings in South Dakota) (citing *Moore v. Sims*, 442 U.S. 415, 423, 435 (1979); *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012) ("[T]here is no doubt that state-court proceedings regarding the welfare of children

---

[4] Here, the Court notes that the issue of *Younger* was raised by defendant the State of Minnesota in response to Mr. Alvar's motion for preliminary injunctive relief, and Mr. Alvar had an opportunity to respond to its arguments concerning the application of *Younger* in his response. Therefore, the question of whether the Court should abstain from exercising jurisdiction over this case is not a surprise.

[5] *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

reflect an important state interest that is plainly within the scope of the [*Younger*] doctrine."); *Miller v. Macone*, No. 25-sc-1396 (PJS/JFD), 2025 WL 1249692, at *2 (D. Minn. Apr. 30, 2025) (finding that ongoing child-custody and child-support proceedings were the "kinds of state proceedings . . . that federal courts typically will avoid under *Younger*"); *Rubbelke*, 2023 WL 3094371, at *2 (same). Because Mr. Alvar's claims in this case relate to ongoing child-custody and child-support proceedings in St. Louis County family court, the first prong suggests that this Court should abstain under *Younger*.

Under the second prong of *Wassef*, courts ask "whether the state proceeding (1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise constitutional challenges." *Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 553 (8th Cir. 2018) (citing *Middlesex*, 457 U.S. at 432). The child-custody proceedings at issue here, which remain pending in state court, are certainly judicial in nature, and there is no question that Minnesota has a "compelling interest in protecting minor children, especially when it is necessary to protect them from their [custodian]." *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 897 (8th Cir. 2020). Mr. Alvar can appear before the state court and has both the right to file motions and to appeal any adverse rulings. Nothing in the record indicates that Mr. Alvar has somehow been impeded from raising constitutional challenges in the state-court case, even if the judges presiding over his proceedings have rejected them. Therefore, the second *Wassef* prong also favors abstention.

Finally, the Court finds that no exception to applying *Younger* abstention is present here because nothing in the pleadings suggests that "the pending state action was brought in bad faith or for the purpose of [harassment]" or that there are other "extraordinary circumstances" that would weigh against abstention. *Trainor v. Hernandez*, 431 U.S. 434, 446–47 (1977). Therefore, because

the Court finds that *Younger* abstention is appropriate here, Mr. Alvar's claims for injunctive relief are dismissed without prejudice. *See Wassef*, 68 F.4th at 1091 (indicating that under *Younger*, dismissal of a federal suit while the claims are being heard by a state court should be without prejudice).

Because Mr. Alvar seeks monetary damages, some claims are not dismissed in full. When *Younger* applies in a case that also has damages claims, courts should stay the damages claims until the relevant state-court proceedings conclude. *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 603 (8th Cir. 1999) ("When monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a statute unconstitutional in order to award damages, the case should not be dismissed. As long as there may be issues which will need to be determined in federal court, a stay rather than a dismissal is the preferred procedure to use in abstaining." (Citation omitted.)). Thus, while the Court concludes that Mr. Alvar's claims for declaratory and injunctive relief would interfere with ongoing state-court child-custody proceedings and should be dismissed, the Court stays his damages claims until the state court proceedings, including any appeals, have concluded.[6]

---

[6] In several places in his complaint, Mr. Alvar either disclaims that he is seeking damages against certain defendants or indicates that he is seeking compensatory and punitive damages from certain defendants only to the extent that such damages may be available because those defendants engaged in conduct that renders immunity defenses inapplicable. And if immunity applies, he seeks only declaratory or injunctive relief. (Dkt. No. 26 at ¶¶ 9–10 ("Global Relief & Immunity Notes"), 112, 122, 125, 128, 130, 132–33, 135–36, 139, 166, 172–75, 177, 180–81, 202, 204, 206–08, 210, 212–13, 215, 229, 253–54.) Thus, it is apparent that Mr. Alvar has disavowed any requests for damages against a number of parties that clearly have immunity based on the allegations in his pleadings (*e.g.*, the State of Minnesota (sovereign immunity), the state court judges carrying out their official judicial duties (absolute judicial immunity), the guardian ad litem carrying out her official duties as required by the state courts (absolute immunity)).

## II.    Motion for Preliminary Injunctive Relief

On July 11, 2025, Mr. Alvar filed a motion for temporary restraining order and preliminary injunction asking the Court "to enjoin Defendants, including the State of Minnesota, its courts, and agents acting under color of state law, from enforcing a contempt incarceration order issued on July 10, 2025, in St. Louis County Family Court, Case No. 69DU-FA-24-551, by Chief Judge Leslie E. Beiers." (Dkt. No. 5.) Mr. Alvar challenges the order to remove the confidential report prepared by GAL Dokken from his advocacy website and social media accounts. According to Mr. Alvar, the order violated his First Amendment rights because it prohibits him from engaging in protected speech and threatened him with incarceration and fines if he did not agree to suppress his own speech. (*Id.*)

When deciding whether to issue a preliminary injunction or a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure,[7] courts consider: (1) "the threat of irreparable harm to the movant"; (2) "the state of the balance between this harm and the injury that granting the injunction will inflict on other parties"; (3) "the probability that movant will succeed on the merits"; and (4) "the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Here, the Court finds that Mr. Alvar has failed to show he is likely to succeed on the merits. *See id.* (stating that this element places a "heavy burden" on the moving party). The

---

[7] The standards for obtaining a temporary restraining order (TRO) or a preliminary injunction are the same. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). However, a TRO is an emergency remedy, normally issued ex parte, that preserves the status quo and prevents immediate injury for a short period until a hearing on a preliminary injunction can take place. *See id.* (noting that, under Fed. R. Civ. P. 65(b)(2), a TRO cannot exceed 14 days unless a court extends the duration for good cause). A preliminary injunction may be issued only after the non-moving party receives notice and an opportunity to be heard and is not subject to any express time limitation. *Id.*

relief requested in Mr. Alvar's motion is precisely the kind of injunctive relief that is covered by the Court's abstention ruling. Therefore, the Court denies Mr. Alvar's motion for injunctive relief.

Although the Court finds the abstention decision is a sufficient basis to deny Mr. Alvar's request for preliminary injunctive relief, it is also worth noting that there are other problems with Mr. Alvar's claims immediately apparent on the face of his complaint. For one, to the extent Mr. Alvar seeks review of matters already decided by the Minnesota state courts, the *Rooker-Feldman* doctrine likely bars this Court's exercise of jurisdiction over those claims. *See Miller*, 2025 WL 1249692, at *2-3 (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)). "Under *Rooker-Feldman*, federal district courts lack jurisdiction over cases brought by state-court losers complaining of injuries caused by state court judgment rendered before the federal court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (cleaned up). For example, Mr. Alvar asserts at least one claim that his constitutional rights were violated by Judge Pearson's handling of Ms. Schmidt's emergency OFP application. To the extent that the OFP proceeding is concluded, and Mr. Alvar claims to have been wronged by the state court's "allegedly erroneous decision" in that proceeding, *Sutter & Gillham PLLC v. Henry*, 146 F.4th 699, 702 (8th Cir. 2025), the *Rooker-Feldman* doctrine bars that claim.

Other potentially insurmountable barriers to Mr. Alvar's claims include the application of judicial and quasi-judicial immunity because he asserts a number of claims against state-court judges and an appointed guardian ad litem based on their decisions and actions in the child-custody proceeding. *Woodworth v. Hulshof*, 891 F.3d 1083, 1090–91 (8th Cir. 2018) (explaining that absolute judicial immunity protects a state-court judge from a § 1983 suit unless the judge's actions fall outside of the judge's official capacity or are taken in the absence of all jurisdiction); *Arseneau*

*v. Pudlowski*, 110 F.4th 1114, 1118 (8th Cir. 2024) (finding that a guardian ad litem was "entitled to absolute immunity for acts that occurred within the course of their court-appointed duties, even if their conduct was wrongful and illegal"). And, Mr. Alvar asserts claims against several private parties under § 1983, but that provision only applies to a person "acting under color of state law," and private parties "may be held liable under § 1983 only if [they are] willing participant[s] in joint activity with the State or its agents." *Magee v. Trs. of the Hamline Univ.*, 957 F. Supp. 2d 1047, 1057 (D. Minn. 2013) (internal quotations omitted). Nothing in the record reflects that the private-actor defendants reached any "mutual understanding, or a meeting of the minds" with any state actor "regarding the violation of plaintiff's constitutional rights." *Id.* at 1058.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**:

1.     Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 5) is **DENIED**.

2.     The Amended Complaint (Dkt. No. 26) is **DISMISSED WITHOUT PREJUDICE** to the extent that it brings claims for declaratory and injunctive relief.

3.     The remainder of this action is **STAYED** pending the final resolution of Plaintiff Ryan W. Alvar's state-court child-custody proceedings challenged in the Amended Complaint.

4.     Plaintiff Ryan Alvar shall inform the Court within 30 days after the state-court matter challenged by the Amended Complaint concludes (including any appeals) by filing an appropriate notice in the docket for this action.

5.     The Clerk of Court shall send a certified copy of this Order to the St. Louis County District Court, Sixth Judicial District.

Date: October 14, 2025                    *s/Katherine Menendez*
                                          Katherine Menendez
                                          United States District Judge